## T. A. LOWERY v. THE STATE.

### No. 4010.          Decided March 29, 1916.

### Rehearing denied April 19, 1916.

**1.—Unlawfully Prescribing Morphine—Indictment—Negativing Exceptions—Rule Stated.**

Where the statute prescribes an offense and therein contains an exception which is a necessary part of said offense, the same must be negatived by proper allegations in the indictment or the information, but where the exception or proviso is not made a constituent or necessary part of the offense by the statute itself, such allegation is not necessary.

**2.—Same—Indictment—Negativing Exceptions—Pleading—Proviso.**

Where, upon trial of unlawfully prescribing morphine to an habitual user thereof, the indictment followed the language of the statute, it was not necessary or proper that it contained any allegation negativing the proviso or exceptions contained in the statutes as these were not a constituent or necessary part of the offense, but matters of defense. Following Brown v. State, 74 Texas Crim. Rep., 498, 168 S. W. Rep., 861, and other cases.

**3.—Same—Charge of Court—Sufficiency of the Evidence—Morphine Habit.**

Where, upon trial of unlawfully prescribing morphine to an habitual user

thereof, the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown.

Appeal from a conviction of unlawfully prescribing morphine to an habitual user thereof; penalty, a fine of $25.

The opinion states the case.

*Mays & Mays,* for appellant.—On question of insufficiency of the indictment: Blair v. State, 96 S. W. Rep., 23; Blair v. State, 97 S. W. Rep., 89; Brown v. State, 74 Texas Crim. Rep., 498, 168 S. W. Rep., 861; U. S. v. Karney, 228 Fed. Rep., 163.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for unlawfully prescribing morphine to an habitual user and assessed the lowest punishment, a fine of $25.

Appellant contends that the indictment is fatally defective in that, in substance, there is no proper allegation therein negativing the proviso.

The statute (P. C., art. 748) is: "It shall be unlawful for any practitioner of medicine, dentistry or veterinary medicine to furnish to, or prescribe for the use of, any habitual user of the same, any cocaine or morphine, or any salts or compound of cocaine or morphine, or any preparation containing cocaine or morphine or their salts, or any opium or chloral hydrate, or any preparation containing opium or chloral hydrate; and it shall also be unlawful for any practitioner of dentistry to prescribe any of the foregoing substances for the use of any person not under his treatment in the regular practice of his profession, or for any practitioner of veterinary medicine to prescribe any of the foregoing substances for the use of any human being; provided, however, that the provisions of this section shall not be construed to prevent any lawfully authorized practitioner of medicine from prescribing in good faith for the use of any habitual user of narcotic drugs such substances as he may deem necessary for the treatment of such habit."

The indictment, outside of the proper preliminary and concluding allegations, is: That appellant, in said State and county, on December 15, 1915, "was then and there a lawfully authorized practitioner of medicine, and, as such, did then and there unlawfully prescribe morphine for the use of Josie Evans, who was then and there an habitual user of morphine."

The same question as to the sufficiency of the indictment in the case of Fyke v. State, 79 Texas Crim. Rep., 247, from the same county was passed upon therein by us on March 15, instant, that is raised in this case, and we there held that the indictment was sufficient. We did not there discuss the question, nor cite the authorities. We deem it best to now do so in this case, which is equally applicable to the Fyke case.

There are two rules, each fully and well established. One, that when a statute prescribes an offense, and also therein contains an exception or proviso which is made a constituent or necessary part of the offense, then such exception or proviso must be negatived by proper allegation in the indictment or information to make a good pleading.

The second is, that where the exception or proviso is not made a constituent or necessary part of the offense by the statute itself, then it is wholly unnecessary for the indictment or information to negative such exception or proviso. In that event, the exception or proviso is a matter of defense only.

And in both rules it makes no difference whether the exception or proviso is in the same or some other article of the statute.

These two rules are not always kept clear in the decisions. It is sometimes held by decisions that simply because the exception or proviso is in the same article, or what is called the "enacting" article of the statute, it must be negatived, regardless of whether or not it is made a constituent or necessary part of the offense. Herein is where the seeming conflict in the decisions arises.

The second, and not the first, rule above, is applicable in this case to the statute under which this prosecution and conviction was had. The proviso in said statute in no proper sense is made either a constituent or necessary part of the offense, but instead, is made a matter of defense only. The statute in plain terms prescribes: It shall be unlawful for *any practitioner* of medicine, dentistry, or veterinary medicine to prescribe for the use of any habitual user of the same, any morphine. That is the offense. Then, as a matter of defense for the *lawfully authorized* practitioner of medicine only, the statute further prescribes: "provided, however, that the provisions of this section shall not be construed to prevent any *lawfully authorized practitioner* of medicine from prescribing in good faith for the use of any habitual user of narcotic drugs, *such substances* as he may deem necessary for the *treatment of such habit.*"

The case of Brown v. State, 168 S. W. Rep., 861, is exactly in point in this case. We there cited some of the authorities; among them U. S. v. Cook, 84 U. S. (17 Wall.), 168, 21 L. Ed., 538, and Slack v. State, 61 Texas Crim. Rep., 372, 136 S. W. Rep., 1073, and also Ann. Cas. 1913B, 112. In the Slack case, in the opinion of Judge Harper on rehearing, we cited and quoted from many decisions directly in point on the question, completely establishing and sustaining the second rule hereinabove stated. Ordinarily, we would not again cite and quote these authorities, but in this instance, we will again cite and quote some of them, as well as cite some others.

This court, through Judge Ramsey, in Newman v. State, 58 Texas Crim. Rep., 228, expressly stated, in substance, that the second rule above stated was recognized and held by this court, and cited Mosely v. State, 18 Texas Crim. App., 311; Hodges v. State, 44 Texas Crim. Rep., 444; Wilkerson v. State, 44 Texas Crim. Rep., 455; Osborne v. State, 42 Texas Crim. Rep., 557, and Hankins v. State, 72 S. W. Rep.,

191. There are also many other decisions of this court to the same effect cited by Judge Harper in said Slack case, and also in said Brown case, supra. We will not again here cite those same cases.

We now cite and quote from some of the decisions cited and quoted by Judge Harper in said Slack case.

In United States v. Cook, supra, it is held: "Commentators and judges have sometimes been led into error by supposing that the words 'enacting clause,' as frequently employed, mean the section of the statute defining the offense, as contradistinguished from a subsequent section in the same statute, which is a misapprehension of the term, as the only real question in the case is, whether the exception is so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission or other ingredients which constitute the offense. Such an offense must be accurately and clearly described, and if the exception is so incorporated with the clause describing the offense that it becomes in fact a part of the description, then it can not be omitted in the pleading; but if it is not so incorporated with the clause defining the offense, then it is matter of defense and must be shown by the other party, though it be in the same section or even in the succeeding sentence. 2 Lead. Cr. Cas. (2 ed.), 12; Vavasour v. Ormrod, 9 Dowl. & Ryl., 597; Spieres v. Parker, 1 T. R., 141; Com. v. Bean, 14 Gray, 52; 1 Stark Cr. Pl., 246."

In State v. Ah Chew, 16 Nev., 50, it is held: "From a careful examination of all the authorities upon this subject, we are of opinion that it is only necessary in an indictment for a statutory offense to negative an exception to the statute when that exception is such as to render the negative of it an essential part of the definition or description of the offense charged. It is the nature of the exception, and not its locality, that determines the question whether it should be stated in the indictment or not. The question is, as stated in State v. Abbey, 'whether the exception is so incorporated with, and becomes a part of the enactment, as to constitute a part of the definition or description of the offense; for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner.' 'It is the nature of the exception, and not its location,' which determines the question. Neither does the question depend upon any distinction between the words 'provided' or 'except' as they may be used in the statute." (See also Metzker v. People, 14 Ill., 101; Stangelein v. State, 17 Ohio St., 453; State v. Miller, 24 Conn., 522; State v. McGlynn, 34 N. H., 422; State v. Wade, id., 495.)

In Territory v. Burns, 6 Mont., 72, it is held: "It is a rule of pleading in criminal law that the indictment should set forth all that is necessary to constitute a complete description of the offense charged. This is especially true of statutory offenses, which is the character of the misdemeanor alleged in the above indictment. The indictment in such case should state all the ingredients of which the offense charged is constituted as contained in the statute which declares and defines

such offense. When that is done the prosecution has set forth a prima facie case, which is all that the law requires.

"When an exception is stated in the statute it is not necessary to negative such exception unless it is a constituent part of the definition of the offense. The exception must be a constituent or an ingredient of the offense declared by the statute, in order to require that it shall be negatived by the indictment. It would appear to have formerly been the rule, that, 'if the exceptions themselves are stated in the enacting clause, it will be necessary to negative them in order that the description of the crime may in all respects correspond with the statute.'

"But however correct or otherwise this view may be, the current of authority now is that it makes no difference in what part of the statute the exception may appear; whether in what is commonly called the enacting clause or not. The criterion which determines the necessity to negative such exception is that it be a constituent or ingredient of the offense. In other words, that such exception is necessary to its complete definition. When the exception is not a part of the definition of the offense, and in this way does not, therefore, become a part of the enacting clause, it is a matter of defense. The enacting clause of a statute is not necessarily alone, or only that which purports to be such, but comprehends every part of the statute which should be stated in order to define the offense with clearness and certainty. When this view of what constitutes the enacting clause is considered, it will be seen that the rule in relation to what should be set forth in indictments for statutory crimes has been uniform. The exception contained in the above statute is not a part of the definition of the offense. United States v. Cook, 17 Wall., 168; State of Nevada v. Ah Chew, 16 Nev., 50; Territory v. Scott, 2 Dakota, 212; State v. Robey, 8 Nev., 312; People v. Nugent, 4 Cal., 341; Foster v. People, 1 Col., 293; Commonwealth v. Hart, 11 Cush., 130; Commonwealth v. Jennings, 121 Mass., 47; Commonwealth v. Byrnes, 126 Id., 248; Commonwealth v. McClanahan, 2 Met. (Ky.), 8; Fleming v. People, 27 N. Y., 329."

In Stanglein v. State, 17 Ohio St., 453, it is held: "A negative averment to the matter of an exception or proviso in a statute is not requisite in an indictment, unless the matter of such exception or proviso enter into and become a part of the description of the offense or a qualification of the language defining it."

In State v. Dry Fork Railroad Co., 50 W. Va., 235, it is held: "The better rule, however, is that no matter whether the exception or proviso is in the enacting clause or not, if it is not a part of the description of the offense in the statute, it need not be negatived in the indictment. 10 Enc. of Pl. & Prac., 495."

In Kitchens v. State, 116 Ga., 847, it is held: "Where a statute provides in general terms that the commission of a given act by any person shall constitute a penal offense, and then provides that the law thus framed shall not apply to a given class of persons, it is not necessary that an indictment based upon the statute should aver that the

accused does not belong to the class of persons thus excepted from the operation of the law."

In Villines v. State, 96 Tenn., 141, it is held: "Whether an indictment shall negative a proviso contained in the statute creating an offense depends not upon the place that the proviso or exception occupies in the statute, but rather its relation to that clause of the statute defining the offense. . . . If the proviso is so expressed in the statute as to be incorporated in the definition of the offense, the indictment must negative the proviso, otherwise it need not be done, although the proviso may be contained in the section that defines the offense."

The rule is tersely stated in section 238 of Wharton's Pleading and Practice: "Unless the proviso is so expressed in the statute as to be incorporated in the definition of the offense, it is not necessary to state in the indictment that the defendant does not come within the exception."

In State v. O'Donnell, 10 R. I., 472, it is said: "Much confusion has been caused by using the phrases, 'enacting clauses,' 'purview,' 'proviso,' and 'exception,' in different senses. The case of State v. Abbey, 29 Ver., 60, contains the most sensible remarks on these rules we have seen—'The rule is founded on the general principle that the indictment must contain the statement of those facts which constitute an offense under the statute.' A prima facie case must be stated, and matter of excuse must be shown by the defendant. 'The question is whether the exception is so incorporated with and becomes a part of the enactment as to constitute a part of the definition or description of the offense.' It is the nature of the exception and not its location which is incorporated."

In State v. Rush, 13 R. I., 198, it is held: "What exceptions in a penal statute are to be negatived in pleading, and what are merely matters of defense, was quite fully considered by this court in O'Donnell's case. The conclusion there reached was that, the question was to be determined by their nature, and not their location with reference to the enacting clause."

The same rule is announced in the case of State v. O'Gorman, 68 Mo., 179.

In Commonwealth v. McClanahan, 59 Ky., 8, it is held: "Nor is it necessary to allege that he is not within such proviso even though the purview should expressly notice them, as by saying none shall do the act prohibited, except in the cases thereinafter excepted. Wharton's Criminal Law, 190; 2 Yerger (8 Tenn.), 233; Commonwealth v. Young, 7 B. Monroe, 46 Ky., 1."

In addition, Judge Harper, in the Slack case, further cites a large number of cases in the notes to volume 8 of the Digest of the United States Supreme Court Reports.

In a note to the Slack case, reported also in the A. & E. Ann. Cas., vol. 27, 1913B, p. 135, the said second rule above stated is again laid down, and it is stated that it is supported in a large number of recent cases, as follows:

*United States.*—U. S. v. Freed, 179 Fed. Rep., 236.

*Alabama.*—Hyde v. State, 155 Ala., 133, 46 So. Rep., 489; Wright v. State, 3 Ala. App., 140, 57 So. Rep., 1023.

*Arkansas.*—Kansas City Southern R. R. Co. v. State, 90 Ark., 343, 119 S. W. Rep., 288.

*California.*—People v. Bartley, 12 Cal. App., 773, 108 Pac. Rep., 868; Hogan v. Superior Ct., 16 Cal. App., 783, 117 Pac. Rep., 947; People v. Priestley, 17 Cal. App., 171, 118 Pac. Rep., 965.

*Colorado.*—Fitch v. People, 45 Colo., 298, 100 Pac. Rep., 1132.

*Delaware.*—State v. Polk, 6 Penn., 456, 69 Atl. Rep., 1006.

*Florida.*—Goff v. State, 60 Fla., 13, 53 So. Rep., 327.

*Georgia.*—Livingston v. State, 6 Ga. App., 208, 64 S. E. Rep., 709; Jones v. State, 8 Ga. App., 411, 69 S. E. Rep., 315; McAdams v. State, 9 Ga. App., 166, 70 S. E. Rep., 893.

*Illinois.*—People v. Evoldi, 152 Ill. App., 658; People v. Ezell, 155 Ill. App., 298; People v. Doschio, 157 Ill. App., 51.

*Indiana.*—State v. Barrett, 172 Ind., 169, 87 N. E. Rep., 7; Witty v. State, 173 Ind., 404, 90 N. E. Rep., 627, 25 L. R. A. (N. S.), 1297; Schondel v. State, 174 Ind., 734, 93 N. E. Rep., 67. See also State v. Bridgewater, 171 Ind., 1, 85 N. E. Rep., 715; Regadanz v. State, 171 Ind., 387, 86 N. E. Rep., 449; Walters v. State, 174 Ind., 545, 92 N. E. Rep., 537.

*Kansas.*—State v. Buis, 83 Kan.; 273, 111 Pac. Rep., 189; State v. Belle Springs Creamery Co., 83 Kan., 389, 111 Pac. Rep., 474.

*Kentucky.*—Com. v. McNutt, 133 Ky., 702, 118 S. W. Rep., 978; Com. v. Louisville, etc., R. Co., 140 Ky., 21, 130 S. W. Rep., 798.

*Louisiana.*—State v. Slover, 128 La., 460, 54 So. Rep., 942.

*Maryland.*—Weber v. State, 116 Md., 402, 81 Atl. Rep., 606.

*Mississippi.*—Bennett v. State, 100 Miss., 684, 56 So. Rep., 777.

*Missouri.*—St. Louis v. Tielkemeyer, 226 Mo., 130, 125 S. W. Rep., 1123; State v. Smith, 233 Mo., 242, 135 S. W. Rep., 465, 33 L. R. A. (N. S.), 179. See also State v. Gow, 235 Mo., 307, 138 S. W. Rep., 648.

*Nevada.*—Ex parte Davis, 33 Nev., 309, 110 Pac. Rep., 1131.

*New York.*—People v. Schultz, 134 N. Y. S., 293.

*Ohio.*—Hamilton v. State, 78 Ohio St., 76, 84 N. E., 601.

*Oklahoma.*—Smythe v. State, 2 Okla. Crim., 286, 101 Pac. Rep., 611, 139 Am. St. Rep., 918; De Graff v. State, 2 Okla. Crim., 519, 103 Pac. Rep., 538.

*Texas.*—Jelinek v. State, 52 Texas Civ. App., 402; Newman v. State, 58 Texas Crim. Rep., 223, 124 S. W. Rep., 956; Doyle v. State, 65 Texas Crim. Rep., 300, 143 S. W. Rep., 630.

*Vermont.*—State v. Carruth, 81 Atl. Rep., 922.

*Virginia.*—Devine v. Com., 107 Va., 860, 13 Ann. Cas., 361.

*Washington.*—State v. Davis, 43 Wash., 116, 86 Pac. Rep., 201; State v. Seifert, 65 Wash., 596, 118 Pac. Rep., 746.

*Wisconsin.*—Splinter v. State, 140 Wis., 567, 123 N. W. Rep., 97.

*Wyoming.*—Vines v. State, 116 Pac. Rep., 1013.

*Canada.*—Rex v. Gill, 18 Ont. L. Rep., 234, 12 Ont. W. Rep., 742.

The first rule above is also stated in said note, and authorities cited to support it.

The only other question is appellant's complaint of one paragraph of the court's charge, which, we think, under the facts of this case, presents no reversible error.

We will state, in substance, all the testimony.

Josie Evans testified that she had lived in Fort Worth eight months. "I have used morphine for nearly eight years, and soon after I came to Fort Worth I went to Dr. T. A. Lowery's office, and he prescribed the prescriptions introduced here in evidence which show that the forty-six prescriptions of ten grains each were issued to me within a period of a little less than two months. I paid him one dollar each for the first prescriptions, and later paid him fifty cents each for the others. I have been suffering from asthma from childhood, that is, not continually, but severe spells at times. He reduced the other prescriptions later to three grains, but this was after he was indicted for unlawfully prescribing narcotics."

The druggist, Gaither, testified that he filed the said prescriptions issued by appellant to Josie Evans for morphine, "as shown here in the evidence." Whereupon, the State rested.

The appellant then introduced five doctors, who purported to testify solely as experts to the effect that reduction is one of the oldest and best known methods of treating addicts, but they really should be confined or guarded during the treatment; that at times the patient has not this protection. Then follows their answer, evidently to a purely hypothetical question, which was based on a state of fact in no way disclosed by the testimony, and especially the testimony of Josie Evans.

He next introduced Mr. Musick, the deputy United States revenue collector, who stated that after the U. S. Harrison Narcotic Law was passed appellant advised with him thereabout, and that he explained to him what he understood applied to said Harrison law. It is unnecessary to further state this. This was all the testimony appellant introduced.

The State then had four doctors to testify that it was impossible to treat an addict permitted to run at large when the reduction treatment is used, but it takes only from six to ten, or fifteen, days to reduce them, and take them from the drug, and then they give their opinion on a hypothetical question unnecessary to state. This was all the testimony.

So far as the court's charge is concerned, it required the jury to believe from the evidence, beyond a reasonable doubt, everything that was necessary before they could convict him, and in his behalf, went further than the testimony would authorize, in that he told them, in effect, that if appellant in good faith deemed the prescription of said morphine to Josie Evans was necessary for the treatment of the habit, or if they had a reasonable doubt, to acquit him. However, that was in his favor, and he could not, and does not, complain of it. What he complains of is that the judge instructed the jury not to consider the evidence of Josie Evans or any other witness, if any, with reference to

the physical condition of the said Josie Evans, caused by other physical ailments, except for the purpose of showing that appellant was treating her for the habit of using morphine, nor to consider her testimony to the effect that he reduced the amount of the prescriptions to her after the indictment herein. This charge presents no reversible error, for the testimony of Josie Evans does not show that in prescribing the morphine for her by appellant, he was treating her for any spell of asthma, nor to cure her of the morphine habit. If the testimony had shown that he prescribed this morphine to relieve her at the time from a severe spell of asthma, a different question would be presented. In the Fyke case, supra, we discussed this question, and there held, as the testimony in that case clearly raised the issue, that the doctor had a right to prescribe morphine to relieve pain when the patient was suffering from a different and additional severe infliction, not for the morphine habit. The testimony in the Fyke case on this point was altogether different from the testimony in this case.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied April 19, 1916.—Reporter.]